1  **THORPE SHWER, P.C.**
   William L. Thorpe (No. 005641)
2  Mitchell W. Fleischmann (No. 021075)
   Jamie Gill Santos (No. 026251)
3  3200 North Central Avenue, Suite 1560
   Phoenix, Arizona  85012-2441
4  Telephone:  (602) 682-6100
   Email:  docket@thorpeshwer.com
5  Email:  wthorpe@thorpeshwer.com
   Email:  mfleischmann@thorpeshwer.com
6  Email:  jsantos@thorpeshwer.com

7
   **RIVKIN RADLER, LLP**
8  Barry I. Levy (to be admitted *pro hac vice*)
   Steven Henesy (to be admitted *pro hac vice*)
9  Melissa D. Medilien (to be admitted *pro hac vice*)
   926 RXR Plaza
10 Uniondale, New York 11556
   Telephone: (516) 357-3000
11 Email: barry.levy@rivkin.com
   Email: steven.henesy@rivkin.com
12 Email: melissa.medilien@rivkin.com

13
   *Counsel for Plaintiffs Government Employees Insurance Co.,*
14 *GEICO Indemnity Co., GEICO General Insurance Co., and*
   *GEICO Casualty Co.*
15
               **IN THE UNITED STATES DISTRICT COURT**
16
                    **FOR DISTRICT OF ARIZONA**
17
   Government Employees Insurance Co.;       NO.
18 GEICO Indemnity Co.; GEICO General
   Insurance Company; and GEICO
19 Casualty Co.,

20                       Plaintiffs,
                                                  **COMPLAINT**
21 v.
                                        **(Plaintiffs Demand a Trial by Jury)**
22 A & G Auto Glass, Inc.; Godfrey
   Companies, L.L.C. d/b/a A & G Auto
23 Glass; Sean Alexander; Anthon
   Godfrey; and Terry Godfrey,
24
                       Defendants.
25
26        Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO

27 General  Insurance  Company  and  GEICO  Casualty  Co.  (collectively  "GEICO"  or

28 "Plaintiffs"), as and for their Complaint against the Defendants, hereby allege as follows:

9210685

## INTRODUCTION

1.      This action seeks to terminate an ongoing fraudulent scheme committed against GEICO and to recover more than $300,000.00 that the Defendants have improperly obtained  from GEICO through the submission of hundreds of fraudulent or otherwise non-reimbursable insurance claims seeking reimbursement for windshield replacement services (the "Windshield Replacement Services") allegedly provided to individuals who were eligible for glass repair/replacement coverage under comprehensive automobile insurance policies issued by GEICO ("Insureds").

2.      In addition to money damages, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $10,000.00 in outstanding claims for Windshield Replacement Services that have been submitted or caused to be submitted by the Defendants through Defendants Godfrey Companies, L.L.C. d/b/a  A & G Auto Glass ("Godfrey LLC") and A & G Auto Glass, Inc. ("A&G Auto Glass" and, collectively with Godfrey LLC, the "A&G Glass Companies"), because the claims were fraudulent because: (i) they involved charges for Windshield Replacement Services that were never legitimately performed and/or provided in the first instance; and (ii) the A&G Glass Companies lacked standing to seek reimbursement in the first instance.

3.      As more fully described in this Complaint, the Defendants engineered a scheme to create the appearance that the A&G Glass Companies provided legitimate Windshield Replacement Services to Insureds in order to submit invoices to GEICO for payment under the Insureds' motor vehicle insurance policies.  In reality, the Windshield Replacement Services were fraudulently billed through the A&G Glass Companies, despite the fact that the A&G Glass Companies: (i) did not legitimately provide the billed-

2

for Windshield Replacement Services in the first instance; and (ii) lacked standing to seek reimbursement in the first instance.

    4.    The Defendants fall into the following categories:

    (i)    Defendants Sean Alexander ("Alexander") and Terry Godfrey ("T. Godfrey") were the owners and operators of A&G Auto Glass, were owners and members of Godfrey LLC, and used the A&G Glass Companies as vehicles to submit fraudulent or otherwise non-compensable claims to GEICO.

    (ii)    Defendant Anthon Godfrey ("A. Godfrey") was an owner and member of Godfrey LLC and used Godfrey LLC as a vehicle to submit fraudulent or otherwise non-compensable claims to GEICO.

    (iii)    Defendant A&G Auto Glass is an Arizona corporation that was used by T. Godfrey and Alexander as a vehicle to submit fraudulent or otherwise non-compensable claims to GEICO.

    (iv)    Defendant Godfrey LLC is an Arizona limited liability company that was used by T. Godfrey, Alexander, and A. Godfrey as a vehicle to submit fraudulent or otherwise non-compensable claims to GEICO.

    5.    As discussed below, the Defendants at all relevant times have known that the charges for the Windshield Replacement Services they submitted, or caused to be submitted, to GEICO were fraudulent, in that the billing falsely represented that (i) they have provided the billed-for Windshield Replacement Services, when in fact they did not; and (ii) the A&G Glass Companies had standing to seek reimbursement in the first instance, when in fact they did not.

    6.    As such, the Defendants do not now have – and never had – any right to be compensated for the Windshield Replacement Services that they billed through the A&G Glass Companies to GEICO.

    7.    The charts annexed hereto as Exhibits "1" and "2" set forth a representative sample of the claims that the Defendants submitted, or caused to be submitted, to GEICO

by means of wire transmission in interstate commerce.

8.      The Defendants' fraudulent scheme began in 2018 and continues uninterrupted through the present day.

9.      As a result of the Defendants' scheme, GEICO has incurred damages of more than $300,000.00.

## THE PARTIES

### I.      Plaintiffs

10.      Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. are each Nebraska corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in the state of Arizona.

### II.      Defendants

11.      Defendant A&G Auto Glass is an Arizona corporation with its principle place of business in Arizona. A&G Auto Glass was incorporated in Arizona on or about January 11, 2013, had Alexander and T. Godfrey as its owners, and was used as a vehicle to submit fraudulent or otherwise non-reimbursable claims to GEICO.

12.      Defendant Godfrey LLC is an Arizona limited liability company with its principle place of business in Arizona. Godfrey LLC was organized in Arizona on or about October 21, 2019, had Alexander, T. Godfrey, and A. Godfrey as its owners and members, and was used as a vehicle to submit fraudulent or otherwise non-reimbursable claims to GEICO.

13.     Defendant Alexander resides in and is a citizen of Arizona. Alexander was an owner of A&G Auto Glass and an owner and member of Godfrey LLC, and used the A&G Glass Companies as vehicles to submit fraudulent or otherwise non-reimbursable claims to GEICO.

14.     Defendant T. Godfrey resides in and is a citizen of Arizona. T. Godfrey was an owner of A&G Auto Glass and an owner and member of Godfrey LLC, and used the A&G Glass Companies as vehicles to submit fraudulent or otherwise non-reimbursable claims to GEICO.

15.     Defendant A. Godfrey resides in and is a citizen of Arizona. A. Godfrey was an owner and member of Godfrey LLC, and used Godfrey LLC as a vehicle to submit fraudulent or otherwise non-reimbursable claims to GEICO.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. Pursuant to 28 U.S.C. § 1331, this Court also has jurisdiction over the claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act) because they arise under the laws of the United States.  In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

17.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the District of Arizona is the District (i) where one or more of the Defendants reside, and (ii) a substantial amount of the activities forming the basis of the Complaint occurred.

5

## **ALLEGATIONS COMMON TO ALL CLAIMS**

18.     GEICO is an insurance company licensed and authorized to do business in the State of Arizona. GEICO underwrites automobile insurance in Arizona.

**I.      Automobile Insurance and Reimbursement for Windshield Replacement Services**

19.     Though comprehensive insurance coverage is not required, a large percentage of Arizona automobile owners carry comprehensive insurance coverage. By law, any insurer who provides comprehensive coverage for a motor vehicle is required to provide the Insured with an option to cover the repair or replacement of damage to any safety equipment, which includes windshields. See Ariz. Rev. St. § 20-264.

20.     In the event of damage to the windshield of a vehicle with comprehensive insurance coverage, Arizona law requires insurers to replace or repair the damaged windshield without application of a deductible. See Ariz. Rev. St. § 20-264.

21.     An Insured can assign his or her right to complete safety equipment coverage benefits – i.e., coverage for windshield repair or replacement – to his/her preferred windshield repair/replacement shop in exchange for the shop's performance of the repair or replacement services.

22.     Then, pursuant to an assignment of benefits given by the Insured to the shop, the shop can perform the work, and submit its invoice for the repair or replacement, together with the work order number, directly to GEICO for payment.  The submission is made using an electronic billing or facsimile transmission system in which the shop's invoice and supporting documents are transmitted to GEICO via interstate wire transfer to GEICO's third-party administrator that is located in Columbus, Ohio.

23.     Thus, in order to have standing to seek reimbursement directly from an insurer such as GEICO, the glass shop must have a valid assignment of benefits from the Insured.

24.     Arizona law generally permits automobile insurers, such as GEICO, only thirty (30) days from their receipt to handle a claim seeking payment for windshield repair and/or replacement. See, e.g., Ariz. Rev. St. § 20-462(A).  If insurers, such as GEICO, do not pay the claim within 30 days, or present some good reason for denying or investigating the claim, they can be liable to the Insured or the Insured's assignee for interest at the legal rate from the date the claim is received. See id. While the 30-day claims handling period helps to ensure that legitimate claims are paid in a timely manner, it also creates perverse incentives for glass shops to engage in fraudulent practices, such as those employed by the Defendants.

25.     GEICO receives hundreds of windshield repair or replacement claims from Arizona Insureds and shops on a daily basis.

26.     Upon information and belief, other Arizona automobile insurers similarly receive a very high volume of windshield repair and replacement claims each day.

27.     Glass shops that engage in the types of fraudulent practices employed by the Defendants depend upon the volume of windshield repair and replacement claims, coupled with the limited amount of time in which insurers have to handle those claims, to shield their fraudulent activity from timely discovery.

28.     In response to fraudulent windshield repair and replacement practices within Arizona, the legislature amended the Unfair Practices and Frauds Article of Arizona's

Insurance Statutes to specifically identify and criminalize unlawful auto glass repair practices. See Ariz. Rev. Stat. §§ 20-463.01, 20-466.01.

29.     In particular, Ariz. Rev. Stat. § 20-463.01 was amended, effective July 29, 2010, to criminalize specific practices by the auto glass industry. See AZ House Committee Minutes, February 1, 2010, noting that "the bill contains a list of the most common fraudulent practices by the auto glass industry."

30.     Specifically, Arizona Rev. Stat. § 20-463.01(A)(1)(a) provides that it is an unlawful practice for a person who sells or repairs auto glass to knowingly submit a false claim to an insurer for auto glass repair or replacement or for related services if the services were not provided.

31.     Other unlawful acts by an auto glass seller or repairer include, among other things, misrepresenting to a policy holder the price of the proposed repairs or replacement being billed to the insurer. See Ariz. Rev. St. § 20-463.01.

32.     In Arizona, the submission of a claim seeking insurance reimbursement that is based in part on a fraudulent misrepresentation renders the entire claim fraudulent and non-reimbursable.

## II.     The Defendants' Fraudulent Scheme

33.     Beginning in 2018, and continuing to the present day, the Defendants engineered a fraudulent scheme to create the false appearance that they legitimately provided the billed-for Windshield Replacement Services, and that they were otherwise eligible for insurance reimbursement.

. . .

8

34.     In reality, as discussed herein, the Defendants did not legitimately provide the billed-for Windshield Replacement Services and were otherwise not eligible to collect insurance reimbursement.

35.     Between 2018 and October 2019, Alexander and T. Godfrey used A&G Auto Glass as their exclusive vehicle for the submission of fraudulent or otherwise non-reimbursable claims to GEICO.

36.     Then, in October 2019, Alexander, T. Godfrey, and A. Godfrey caused Godfrey LLC to be organized in Arizona.

37.     Thereafter, Alexander, T. Godfrey, and A. Godfrey used Godfrey LLC as a replacement for A&G Auto Glass, and as their exclusive vehicle for the submission of fraudulent or otherwise non-reimbursable claims to GEICO.

38.     In keeping with the fact that Godfrey LLC served as a replacement for A&G Auto Glass, A&G Auto Glass stopped purporting to provide and bill for Windshield Replacement Services contemporaneous to Godfrey LLC beginning to purport to provide and bill for those same services.

39.     In further keeping with that fact that Godfrey LLC served as a replacement for A&G Auto Glass, Godfrey LLC: (i) had the same phone number as A&G Auto Glass, (ii) purported to provide substantially identical services in the same geographic area as A&G Auto Glass, (iii) operated in a virtually identical fashion, and (iv) actually did business in the community as "A & G Auto Glass".

40.     Besides their names – and the addition of A. Godfrey as a member of Godfrey LLC – there was no substantive difference between A&G Auto Glass and Godfrey LLC.

41.     In the claims identified in Exhibits "1" and "2", the Defendants were, in most instances, contacted by Insureds whose vehicles were claimed to have required either a replacement or repair of their windshields.

42.     Once an Insured contacted either of the A&G Glass Companies, either the Insured, the A&G Glass Companies, or both contacted GEICO in order to advise GEICO of their intentions to submit a claim for a windshield replacement and obtain a claim number.

43.     Thereafter, the A&G Glass Companies typically scheduled a date and time for one of its technicians to meet each Insured at a designated location (i.e., a home or office) in order to perform a windshield replacement.

44.     After the replacement of an Insured's windshield, the Defendants would electronically submit an invoice to GEICO seeking reimbursement for Windshield Replacement Services that were claimed to be performed. As discussed below, the claims in Exhibits "1" and "2" were fraudulent in that the Defendants routinely falsely represented to GEICO that: (i) the Windshield Replacement Services had been performed, when in fact they had not been; and (ii) the A&G Glass Companies had standing to seek reimbursement directly from GEICO, when in fact they did not.

**A.     Fraudulent Billing for Windshield Replacement Services that were Never Provided in the First Instance**

45.     The Defendants submitted claims through the A&G Glass Companies to GEICO for Windshield Replacement Services they never legitimately provided in the first instance.

46.     In the claims identified in Exhibits "1" and "2", the Defendants routinely submitted claims to GEICO that falsely represented that the A&G Glass Companies had

10

installed a specific windshield and requested reimbursement for the Windshield Replacement Services, typically seeking reimbursement from GEICO ranging from $120.00 to more than $800.00.

47.     However, in virtually all of the claims identified in Exhibits "1" and "2", the Defendants never installed the billed-for windshields in the Insureds' vehicles. Instead, the Defendants installed lower quality, less expensive windshields in the Insureds' vehicles, to the extent they installed any windshields at all.

48.     Then, T. Godfrey, Alexander, A. Godfrey, A&G Auto Glass, and Godfrey LLC submitted claims to GEICO that falsely represented that either A&G Auto Glass or Godfrey LLC had provided the billed-for Windshield Replacement Services, when in fact they had not.

49.     For example:

(i)     On or about March 20, 2018, T. Godfrey, Alexander, and A&G Auto Glass submitted a claim through A&G Auto Glass for a windshield replacement they purportedly provided to an Insured named KG. The claim falsely represented that A&G Auto Glass had installed a windshield with part number FW03760GBYN on KG's vehicle, despite the fact that A&G Auto Glass never installed the billed-for windshield on KG's vehicle in the first instance.

(ii)    On or about December 3, 2018, T. Godfrey, Alexander, and A&G Auto Glass submitted a claim through A&G Auto Glass for a windshield replacement they purportedly provided to an Insured named KG. The claim falsely represented that A&G Auto Glass had installed a windshield with part number FW03760GBYN on KG's vehicle, despite the fact that A&G Auto Glass never installed the billed-for windshield on KG's vehicle in the first instance.

(iii)   On or about December 13, 2018, T. Godfrey, Alexander, and A&G Auto Glass submitted a claim through A&G Auto Glass to GEICO for a windshield replacement they purportedly provided to an Insured named ML. The claim falsely represented that A&G Auto Glass had installed a windshield with part number FW03664GTYN on ML's vehicle, despite

the fact that A&G Auto Glass never installed the billed-for windshield on ML's vehicle in the first instance.

(iv)     On or about January 23, 2019, T. Godfrey, Alexander, and A&G Auto Glass submitted a claim through A&G Auto Glass for a windshield replacement they purportedly provided to an Insured named KG. The claim falsely represented that A&G Auto Glass had installed a windshield with part number FW03760GBYN on KG's vehicle, despite the fact that A&G Auto Glass never installed the billed-for windshield on KG's vehicle in the first instance.

(v)     On or about February 25, 2019, T. Godfrey, Alexander, and A&G Auto Glass submitted a claim through A&G Auto Glass to GEICO for a windshield replacement they purportedly provided to an Insured named RP. The claim falsely represented that A&G Auto Glass had installed a windshield with part number FW03557GBYN on RP's vehicle, despite the fact that A&G Auto Glass never installed the billed-for windshield on RP's vehicle in the first instance.

(vi)     On or about March 22, 2019, T. Godfrey, Alexander, and A&G Auto Glass submitted a claim through A&G Auto Glass to GEICO for a windshield replacement they purportedly provided to an Insured named JC. The claim falsely represented that A&G Auto Glass had installed a windshield with part number DW02131GTYN on JC's vehicle, despite the fact that A&G Auto Glass never installed the billed-for windshield on JC's vehicle in the first instance.

(vii)     On or about May 7, 2019, T. Godfrey, Alexander, and A&G Auto Glass submitted a claim through A&G Auto Glass for a windshield replacement they purportedly provided to an Insured named DB. The claim falsely represented that A&G Auto Glass had installed a windshield with part number DW01829GBYN on DB's vehicle, despite the fact that A&G Auto Glass never installed the billed-for windshield on DB's vehicle.

(viii)     On or about July 8, 2019, T. Godfrey, Alexander, and A&G Auto Glass submitted a claim through A&G Auto Glass to GEICO for a windshield replacement they purportedly provided to an Insured named ASP. The claim falsely represented that A&G Auto Glass had installed a windshield with part number FW03719GTY on ASP's vehicle, despite the fact that A&G Auto Glass never installed the billed-for windshield on ASP's vehicle in the first instance.

(ix)     On or about July 24, 2019, T. Godfrey, Alexander, and A&G Auto Glass submitted a claim through A&G Auto Glass to GEICO for a windshield replacement they purportedly provided to an Insured named SO. The

claim falsely represented that A&G Auto Glass had installed a windshield with part number FW04328GBY on SO's vehicle, despite the fact that A&G Auto Glass never installed the billed-for windshield on SO's vehicle in the first instance.

(x)   On or about August 23, 2019, T. Godfrey, Alexander, and A&G Auto Glass submitted a claim through A&G Auto Glass to GEICO for a windshield replacement they purportedly provided to an Insured named PE. The claim falsely represented that A&G Auto Glass had installed a windshield with part number FW2838GYY on PE's vehicle, despite the fact that A&G Auto Glass never installed the billed-for windshield on PE's vehicle in the first instance.

(xi)   On or about November 8, 2019, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named SK. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04306GBYN on SK's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on SK's vehicle in the first instance.

(xii)   On or about December 18, 2019, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named HB. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW02366GTYN on HB's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on HB's vehicle in the first instance.

(xiii)   On or about January 21, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named LR. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW02418GTY on LR's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on LR's vehicle in the first instance.

(xiv)   On or about January 21, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named RR. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW02479GTN on RR's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on RR's vehicle in the first instance.

(xv)   On or about January 17, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named KC. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW03229GGYN on KC's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on KC's vehicle in the first instance.

(xvi)  On or about January 20, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named GP. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW02418GTYN on GP's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on GP's vehicle in the first instance.

(xvii) On or about February 5, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named SM. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW02518GBNNN on SM's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on SM's vehicle in the first instance.

(xviii) On or about February 12, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named DS. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW4099GBYN on DS's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on DS's vehicle in the first instance.

(xix)  On or about February 14, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named CD. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW02214GTYN on CD's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on CD's vehicle in the first instance.

(xx)   On or about February 18, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named HW. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04205GBYN on HW's vehicle, despite

the fact that Godfrey LLC never installed the billed-for windshield on HW's vehicle in the first instance.

(xxi)   On or about February 24, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named JE. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW03851GTYN on JE's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on JE's vehicle in the first instance.

(xxii)   On or about February 24, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named JL. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04242GTYN on JL's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on JL's vehicle in the first instance.

(xxiii) On or about February 26, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named PP. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW03757GBNN on PP's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on PP's vehicle in the first instance.

(xxiv) On or about March 3, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named JL. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04628GTYN on JL's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on JL's vehicle in the first instance.

(xxv)   On or about March 9, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named JM. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04757GBYN on JM's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on JM's vehicle in the first instance.

(xxvi) On or about March 9, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named

TP. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW01880GTNN on TP's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on TP's vehicle in the first instance.

(xxvii) On or about March 16, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named DP. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04129GTNN on DP's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on DP's vehicle in the first instance.

(xxviii) On or about March 17, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named MH. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW02232GTYN on MH's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on MH's vehicle in the first instance.

(xxix) On or about March 26, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named SS. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW01853GBNN on SS's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on SS's vehicle in the first instance.

(xxx) On or about March 27, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named EF. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW03425GBYN on EF's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on EF's vehicle in the first instance.

(xxxi) On or about April 3, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named JW. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW02557GGYN on JW's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on JW's vehicle in the first instance.

(xxxii) On or about April 7, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named CA. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04989GTYN on CA's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on CA's vehicle in the first instance.

(xxxiii) On or about April 10, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC GEICO for a windshield replacement they purportedly provided to an Insured named DC. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW03298GTNN on DC's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on DC's vehicle in the first instance.

(xxxiv) On or about April 13, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named DM. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW02075GTYN on DM's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on DM's vehicle in the first instance.

(xxxv) On or about April 16, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named RO. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04328GBY on RO's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on RO's vehicle in the first instance.

(xxxvi) On or about April 17, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named JK. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04757GBYN on JK's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on JK's vehicle in the first instance.

(xxxvii) On or about April 23, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named TS. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW02125GTYN on TS's vehicle, despite

the fact that Godfrey LLC never installed the billed-for windshield on TS's vehicle in the first instance.

(xxxviii) On or about May 5, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named MH. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW01961GBYN on MH's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on MH's vehicle in the first instance.

(xxxix) On or about May 8, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named KJ. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW02031GTYN on KJ's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on KJ's vehicle in the first instance.

(xl) On or about May 13, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named MM. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04514GBYNon MM's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on MM's vehicle in the first instance.

(xli) On or about May 21, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named TS. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW02075GTYN on TS's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on TS's vehicle in the first instance.

(xlii) On or about May 26, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named JJ. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04768GTYN on JJ's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on JJ's vehicle in the first instance.

(xliii) On or about May 27, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a

windshield replacement they purportedly provided to an Insured named NL. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04168GTYN on NL's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on NL's vehicle in the first instance.

(xliv) On or about June 1, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named DP. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW02628GBYN on DP's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on DP's vehicle in the first instance.

(xlv) On or about June 2, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named EM. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04215GBYN on EM's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on EM's vehicle in the first instance.

(xlvi) On or about June 2, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named KR. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW02563GTYN on KR's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on KR's vehicle in the first instance.

(xlvii) On or about June 9, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named CH. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW01958GGYN on CH's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on CH's vehicle in the first instance.

(xlviii) On or about June 9, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named JC. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW02224GTYN on JC's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on JC's vehicle in the first instance.

1
2
3
4
5

(xlix)   On or about June 12, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named BD. The claim falsely represented that Godfrey LLC had installed a windshield with part number DW02294GBYN on BD's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on BD's vehicle in the first instance.

6
7
8
9
10

(l)      On or about June 26, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC submitted a claim through Godfrey LLC to GEICO for a windshield replacement they purportedly provided to an Insured named MB. The claim falsely represented that Godfrey LLC had installed a windshield with part number FW04757GBYN on MB's vehicle, despite the fact that Godfrey LLC never installed the billed-for windshield on MB's vehicle in the first instance.

11
12
13
14
15
16

50.   These are only representative examples. In the claims identified in Exhibits "1" and "2", T. Godfrey, Alexander, A. Godfrey, A&G Auto Glass, and Godfrey LLC routinely submitted claims to GEICO that falsely represented that either A&G Auto Glass or Godfrey LLC had provided the billed-for Windshield Replacement Services, when in fact they had not.

17
18
19
20

51.   In reality, the Defendants virtually never legitimately provided the billed-for Windshield Replacement Services, and they were therefore not eligible to collect insurance reimbursement from GEICO.

21
22

52.   In fact, the submission of fraudulent insurance claims was the regular way in which the Defendants carried out the A&G Glass Companies' business activities.

23
24

**B.     The Phony Invoices Provided to GEICO Insureds**

25
26
27
28

53.   The Defendants knew that, in order to perpetuate their fraudulent scheme, they needed to prevent GEICO and its Insureds from discovering that they were submitting billing under the Insureds' insurance policies for Windshield Replacement Services that were never provided in the first instance.

54. Toward that end, the Defendants employed a practice whereby they generated two invoices in connection with each service call. In particular, in many of the claims identified in Exhibit "1" and "2", the Defendants:

(i) provided the Insureds with an invoice listing the part number for the windshield they actually installed on the Insureds' vehicle, to the extent they installed any windshields at all, but not referencing the windshield for which they ultimately sought reimbursement from GEICO; and,

(ii) generated a separate invoice, which they submitted to GEICO, seeking reimbursement for a windshield with a different part number from that of the windshield they installed on the Insureds' vehicle and from the windshield listed on the "receipt" they provided to the Insureds, typically for a more expensive and higher quality windshield.

55. For example:

(i) On or about January 15, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC provided an invoice to an Insured named RR representing that a windshield with part number DW1881 GTN-Mygrant had been installed on RR's vehicle, but failing to reference in any way the windshield part number that was ultimately billed to GEICO. T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC subsequently submitted an invoice to GEICO billing GEICO for windshield part number DW02479GTN, which was a more expensive and higher quality windshield than the windshield that was actually installed on RR's vehicle and referenced in the invoice provided to the Insured.

(ii) On or about February 12, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC provided an invoice to an Insured named DS representing that a windshield with part number FW4095 - Pilkington had been installed on DS's vehicle, but failing to reference in any way the windshield part number that was ultimately billed to GEICO. T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC subsequently submitted an invoice to GEICO billing GEICO for windshield part number FW4099GBYN, which was a more expensive and higher quality windshield than what was actually installed on DS's vehicle and referenced in the invoice provided to the Insured.

(iii) On or about March 3, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC provided an invoice to an Insured named JL representing that a windshield with part number FW4626 GTY – Pilkington had been installed on JL's vehicle, but failing to reference in any way the windshield part number that was ultimately billed to GEICO. T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC subsequently

submitted an invoice to GEICO billing GEICO for windshield part number FW04628GTYN, which was a more expensive and higher quality windshield than what was actually installed on JL's vehicle and referenced in the invoice provided to the Insured.

(iv)   On or about April 7, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC provided an invoice to an Insured named CA representing that a windshield with part number FW04991 – Pilkington had been installed on CA's vehicle, but failing to reference in any way the windshield part number that was ultimately billed to GEICO. T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC subsequently submitted an invoice to GEICO billing GEICO for windshield part number FW04989GTYN, which was a more expensive and higher quality windshield than what was actually installed on CA's vehicle and referenced in the invoice provided to the Insured.

(v)   On or about May 21, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC provided an invoice to an Insured named TS representing that a windshield with part number DW1993-GTN MOP MYGRANT had been installed on TS's vehicle, but failing to reference in any way the windshield part number that was ultimately billed to GEICO. T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC subsequently submitted an invoice to GEICO billing GEICO for windshield part number DW02075GTYN, which was a more expensive and higher quality windshield than what was actually installed on TS's vehicle and referenced in the invoice provided to the Insured.

(vi)   On or about May 29, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC provided an invoice to an Insured named NL representing that a windshield with part number FW4105 – Pilkington had been installed on NL's vehicle, but failing to reference in any way the windshield part number that was ultimately billed to GEICO. T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC subsequently submitted an invoice to GEICO billing GEICO for windshield part number FW04168GTYN, which was a more expensive and higher quality windshield than what was actually installed on NL's vehicle and referenced in the invoice provided to the Insured.

(vii)   On or about June 2, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC provided an invoice to an Insured named KR representing that a windshield with part number DW02415-GTY Mygrant had been installed on KR's vehicle, but failing to reference in any way the windshield part number that was ultimately billed to GEICO. T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC subsequently submitted an invoice to GEICO billing GEICO for windshield part number DW02563GTYN, which was a more expensive and higher

quality windshield than what was actually installed on KR's vehicle and referenced in the invoice provided to the Insured.

(viii)   On or about June 5, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC provided an invoice to an Insured named MB representing that a windshield with part number FW4049- Pilkington had been installed on MB's vehicle, but failing to reference in any way the windshield part number that was ultimately billed to GEICO. T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC subsequently submitted an invoice to GEICO billing GEICO for windshield part number FW04757GBYN, which was a more expensive and higher quality windshield than what was actually installed on MB's vehicle and referenced in the invoice provided to the Insured.

(ix)   On or about June 10, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC provided an invoice to an Insured named JC representing that a windshield with part number DW2002 GTY - Mygrant had been installed on JC's vehicle, but failing to reference in any way the windshield part number that was ultimately billed to GEICO. T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC subsequently submitted an invoice to GEICO billing GEICO for windshield part number DW02224GTYN, which was a more expensive and higher quality windshield than what was actually installed on JC's vehicle and referenced in the invoice provided to the Insured.

(x)   On or about June 16, 2020, T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC provided an invoice to an Insured named BD representing that a windshield with part number DW2133 – Mygrant had been installed on BD's vehicle, but failing to reference in any way the windshield part number that was ultimately billed to GEICO. T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC subsequently submitted an invoice to GEICO billing GEICO for windshield part number DW02294GBYN, which was a more expensive and higher quality windshield than what was actually installed on BD's vehicle and referenced in the invoice provided to the Insured.

56.   These are only representative examples. In the claims identified in Exhibits "1" and "2", the Defendants – in order to conceal and perpetuate their fraudulent scheme – routinely provided Insureds with a phony invoice falsely representing that they would bill GEICO for a less expensive windshield than what was ultimately billed to GEICO.

**C.    The Defendants Lacked Standing to Seek Reimbursement From GEICO for the Windshield Replacement Services**

57.    Moreover, the Defendants lacked standing to seek reimbursement from GEICO for the Windshield Replacement Services.

58.    In order to seek reimbursement directly from GEICO for purported Windshield Replacement Services, a glass shop must be in possession of a valid assignment of the Insured's insurance benefits.

59.    By extension, a glass shop that is not in possession of a valid assignment of benefits from an Insured does not have standing to seek reimbursement from insurers, such as GEICO, for Windshield Replacement Services.

60.    In the claims identified in Exhibits "1" and "2", the Defendants routinely falsely represented that the A&G Glass Companies were in possession of valid and enforceable assignments of benefits from the Insureds to whom the Defendants falsely purported to provide Windshield Replacement Services, and therefore had standing to seek reimbursement from GEICO.

61.    In fact, the A&G Glass Companies were not in possession of valid and enforceable assignments of benefits from Insureds, and therefore lacked standing to seek reimbursement from GEICO for the Windshield Repair Services.

62.    For example, in keeping with the fact that the A&G Glass Companies were not in possession of valid and enforceable assignments of benefits from Insureds, as set forth above, the Defendants routinely provided the Insureds with an invoice listing the part number for the windshield they actually installed on the Insureds' vehicle, to the extent they installed any windshields at all, but not referencing the windshield for which they ultimately sought reimbursement from GEICO.

24

63.     The phony invoices provided by the Defendants to Insureds included language that each Insured had authorized their insurer to "pay this invoice in full to A&G Auto Glass/Godfrey Companies, llc. upon work completion."

64.     Even if this language did qualify as a valid and enforceable assignment of benefits – which it did not – as detailed above, the Windshield Replacement Services that the Defendants ultimately billed to GEICO were different than those outlined on the phony invoices the Defendants provided to Insureds. Therefore, the Insureds had not authorized GEICO to issue reimbursement to the Defendants for the billed-for Windshield Replacement Services – much less validly assigned their benefits to the Defendants.

**III.    The Fraudulent Claims the Defendants Submitted or Caused to be Submitted to GEICO**

65.     To support the fraudulent charges, the Defendants systematically submitted or caused to be submitted claims through the A&G Glass Companies to GEICO for Windshield Replacement Services that were never legitimately provided by the Defendants and/or for which they lacked standing to seek reimbursement in the first instance.

66.     All of the claims for Windshield Replacement Services identified in Exhibits "1" and "2" were submitted by Defendants _via_ electronic transmission from Arizona to GEICO's third-party administrator in Columbus, Ohio.

67.     The claims that the Defendants submitted or caused to be submitted through the A&G Glass Companies to GEICO were false and misleading in that the claims submitted by the Defendants through the A&G Glass Companies routinely falsely represented that: (i) the billed-for Windshield Replacement Services were legitimately

performed and/or provided in the first instance, when in fact they were not; and (ii) the A&G Glass Companies had standing to seek reimbursement from GEICO in the first instance, when in fact they did not.

**IV.    The  Defendants'  Fraudulent  Concealment  and  GEICO's  Justifiable Reliance**

68.    The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the purported Windshield Replacement Services and their submission of charges to GEICO.

69.    To induce GEICO to promptly pay the fraudulent charges for the Windshield Replacement Services, the Defendants systemically concealed their fraud and have gone to great lengths to accomplish this concealment.

70.    Specifically, the Defendants submitted, or caused to be submitted, claims which falsely represented that: (i) the A&G Glass Companies had provided the billed-for services, when in fact they had not; and (ii) the A&G Glass Companies had standing to seek reimbursement directly from GEICO, when in fact they did not.

71.    Moreover, the Defendants generated and provided Insureds with phony invoices in order to conceal the fact that they intended to bill GEICO for Windshield Replacement Services that had not been legitimately provided in the first instance.

72.    GEICO is obligated to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations described above, were designed to, and did, cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $300,000.00.

26

73.     Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraudulent conduct from GEICO, GEICO did not discover, and could not reasonably have discovered, that its damages were attributable to fraud until shortly before it filed this Complaint.

### FIRST CAUSE OF ACTION
**Against A&G Auto Glass and Godfrey LLC**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

74.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

75.     There is an actual case in controversy between GEICO and the A&G Glass Companies regarding more than $10,000.00 in fraudulent claims for the purported Windshield Replacement Services that has been submitted to GEICO.

76.     The A&G Glass Companies have no right to receive payment for any pending claims submitted to GEICO because the claims misrepresented that the A&G Glass Companies: (i) legitimately provided the underlying billed-for Windshield Replacement Services, when in fact they did not; and/or (ii) had standing to seek reimbursement directly from GEICO, when in fact they did not.

77.     Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that the A&G Glass Companies has no right to receive payment for any pending claims submitted to GEICO.

### SECOND CAUSE OF ACTION
**Against T. Godfrey and Alexander**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

78.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

79.     A&G Auto Glass is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

80.     T. Godfrey and Alexander have knowingly conducted and/or participated, directly or indirectly, in the conduct of A&G Auto Glass' affairs through a pattern of racketeering activity consisting of repeated violations of the federal wire fraud statute, 18 U.S.C. § 1343, based upon the use of the wires in interstate commerce to submit or cause to be submitted hundreds of fraudulent claims for Windshield Replacement Services on a continuous basis for over 18 months seeking insurance payments under GEICO insurance policies that A&G Auto Glass was never entitled to receive because: (i) A&G Auto Glass never legitimately provided the billed-for Windshield Replacement Services; and (ii) A&G Auto Glass lacked standing to seek reimbursement in the first instance. A representative sample of the fraudulent bills submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

81.     A&G Auto Glass' business is racketeering activity, inasmuch as the enterprise exists solely for the purpose of submitting fraudulent charges to Arizona automobile insurers.  The predicate acts of wire fraud are the regular way in which T. Godfrey and Alexander operate A&G Auto Glass, inasmuch as A&G Auto Glass was never entitled to the billed-for insurance benefits, and the acts of wire fraud therefore are essential in order for A&G Auto Glass to function.  Furthermore, the intricate planning required to carry out and conceal the predicate acts of wire fraud implies a threat of continued criminal activity.

28

82.    A&G Auto Glass is engaged in inherently unlawful acts, inasmuch as it submitted fraudulent billing to GEICO and other insurers. These inherently unlawful acts are taken by A&G Auto Glass in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent billing for Windshield Replacement Services.

83.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid an amount to be determined at trial, but in no event less than $225,000.00 pursuant to the fraudulent claims submitted through A&G Auto Glass.

84.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### THIRD CAUSE OF ACTION
**Against T. Godfrey and Alexander**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

85.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

86.    A&G Auto Glass is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

87.    T. Godfrey and Alexander are employed by and/or associated with A&G Auto Glass.

88.    Alexander, A. Godfrey, and T. Godfrey knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of A&G Auto Glass' affairs through a pattern of racketeering activity consisting of repeated

29

violations of the federal wire fraud statute, 18 U.S.C. § 1343, based upon the use of the wires in interstate commerce to submit or cause to be submitted hundreds of fraudulent claims for Windshield Replacement Services on a continuous basis for over 18 months seeking insurance payments under GEICO insurance policies that A&G Auto Glass was never entitled to receive because: (i) A&G Auto Glass never legitimately provided the billed-for Windshield Replacement Services; and (ii) A&G Auto Glass lacked standing to seek reimbursement in the first instance. A representative sample of the fraudulent bills and corresponding claim submissions submitted to GEICO using wires in interstate commerce that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "1". Each such wire transmission was made by Alexander and T. Godfrey in furtherance of the wire fraud scheme.

89.     T. Godfrey and Alexander knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

90.     GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid an amount to be determined at trial, but in no event less than $225,000.00 pursuant to the fraudulent claims submitted through A&G Auto Glass.

91.     By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

30

**FOURTH CAUSE OF ACTION**
**Against T. Godfrey and Alexander**
**(Violation of Ariz. Rev. Stat. § 13-2314.04)**

92.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

93.     A&G Auto Glass is an "enterprise" under Ariz. Rev. Stat. § 13-2314.04.

94.     In furtherance of the fraudulent claims submitted through A&G Auto Glass, T. Godfrey and Alexander submitted or caused to be submitted hundreds of fraudulent invoices through A&G Auto Glass in order to obtain reimbursement from GEICO.

95.     When the claims for reimbursement were submitted to GEICO, T. Godfrey and Alexander knew that the submission of invoices contained false and misleading information concerning facts material to GEICO's determination to pay the claims, including misrepresentations that: (i) A&G Auto Glass had provided the underlying Windshield Replacement Services  to Insureds when in fact it did not; and (ii) A&G Auto Glass had standing to seek reimbursement from GEICO in the first instance, when in fact it did not.

96.     These knowing and intentional acts constitute a pattern of unlawful activity, in that said acts constitute violations of Ariz. Rev. Stat. §§ 13-2310, 20-463(A)(1)(c), 20-463(A)(5), 20-463.01(A)(1)(a), and 20-463.01(A)(1)(c).

97.     This pattern of unlawful activity resulted in GEICO issuing payment for the reimbursement of hundreds of claims for which it otherwise would not have provided reimbursement.

. . .

31

98.     T. Godfrey and Alexander's pattern of unlawful activity has caused GEICO to sustain damages in an amount to be determined at trial, but in no event less than $225,000.00.

99.     By reason of T. Godfrey and Alexander's conduct, GEICO is also entitled to recover threefold the actual damages it actually sustained, reasonable attorney's fees, and court costs pursuant to Ariz. Rev. Stat. § 13-2314.04.

### FIFTH CAUSE OF ACTION
**Against T. Godfrey, Alexander, and A&G Auto Glass**
**(Common Law Fraud)**

100.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

101.    T. Godfrey, Alexander, and A&G Auto Glass intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts in the course of their submission of fraudulent claims to GEICO for reimbursement.

102.    The false and fraudulent statements of material fact and acts of fraudulent concealment include the misrepresentations that: (i) A&G Auto Glass had legitimately provided the billed-for Windshield Replacement Services to Insureds, when in fact it had not; and (ii) A&G Auto Glass had standing to seek reimbursement from GEICO in the first instance, when in fact it did not.

103.    T. Godfrey, Alexander, and A&G Auto Glass intentionally made the above-described false and fraudulent statements and concealed material facts from GEICO in a calculated effort to mislead GEICO and induce GEICO to pay for reimbursement of non-reimbursable claims.

1
2
3
4
5
6

104.   GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid an amount to be determined at trial, but in no event less than $225,000.00 in the reimbursement of claims made by T. Godfrey, Alexander, and A&G Auto Glass through A&G Auto Glass.

7
8
9

105.   The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

10
11
12

106.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

13
14
15

**SIXTH CAUSE OF ACTION**
**Against T. Godfrey, Alexander, and A&G Auto Glass**
**(Unjust Enrichment)**

16
17

107.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

18
19
20

108.   As set forth above, T. Godfrey, Alexander, and A&G Auto Glass have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

21
22
23
24
25
26

109.   When GEICO paid the invoices provided by T. Godfrey, Alexander, and A&G Auto Glass submitted for reimbursement, it reasonably believed that the billed-for Windshield Replacement Services described in invoices submitted by T. Godfrey, Alexander, and A&G Auto Glass through A&G Auto Glass were legitimately provided and eligible for reimbursement.

27
28

110.   Absent the misrepresentations by the Defendants, GEICO would not have issued the payment for the claims identified in Exhibit "1".

33

111.    Therefore, GEICO's payment of the claims submitted by T. Godfrey, Alexander, and A&G Auto Glass through A&G Auto Glass resulted in T. Godfrey, Alexander, and A&G Auto Glass being unjustly enriched, as T. Godfrey, Alexander, and A&G Auto Glass received payment for claims they submitted to GEICO, which should not have been paid because A&G Auto Glass never provided the underlying Windshield Replacement Services as described in their invoices.

112.    T. Godfrey, Alexander, and A&G Auto Glass' enrichment was at GEICO's expense, as GEICO paid T. Godfrey, Alexander, and A&G Auto Glass, through A&G Auto Glass more than $225,000.00.

113.    By reason of the above, T. Godfrey, Alexander, and A&G Auto Glass have been unjustly enriched in an amount to be determined at trial, but in no event less than $225,000.00.

### SEVENTH CAUSE OF ACTION
**Against A. Godfrey, T. Godfrey, and Alexander**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

114.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

115.    Godfrey LLC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

116.    A. Godfrey, T. Godfrey, and Alexander have knowingly conducted and/or participated, directly or indirectly, in the conduct of Godfrey LLC's affairs through a pattern of racketeering activity consisting of repeated violations of the federal wire fraud statute, 18 U.S.C. § 1343, based upon the use of the wires in interstate commerce to submit, or cause to be submitted, hundreds of fraudulent claims for Windshield

34

Replacement Services on a continuous basis for more than one year seeking insurance payments under GEICO insurance policies that Godfrey LLC was never entitled to receive because: (i) Godfrey LLC never legitimately provided the billed-for Windshield Replacement Services; and (ii) Godfrey LLC lacked standing to seek reimbursement in the first instance. A representative sample of the fraudulent bills submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2".

117.    Godfrey LLC's business is racketeering activity, inasmuch as the enterprise exists solely for the purpose of submitting fraudulent charges to Arizona automobile insurers.  The predicate acts of wire fraud are the regular way in which A. Godfrey, T. Godfrey, and Alexander operate Godfrey LLC, inasmuch as Godfrey LLC was never entitled to the billed-for insurance benefits, and the acts of wire fraud therefore are essential in order for Godfrey LLC to function.  Furthermore, the intricate planning required to carry out and conceal the predicate acts of wire fraud implies a threat of continued criminal activity.

118.    Godfrey LLC is engaged in inherently unlawful acts, inasmuch as it submitted fraudulent billing to GEICO and other insurers. These inherently unlawful acts are taken by Godfrey LLC in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent billing for Windshield Replacement Services.

119.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid an amount to be determined at trial, but in no event less than $75,000.00 pursuant to the fraudulent claims submitted through Godfrey LLC.

120.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### EIGHTH CAUSE OF ACTION
**Against A. Godfrey, T. Godfrey, and Alexander**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

121.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

122.   Godfrey LLC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

123.   A. Godfrey, T. Godfrey, and Alexander are employed by and/or associated with Godfrey LLC.

124.   Alexander, A. Godfrey, and T. Godfrey knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Godfrey LLC's affairs through a pattern of racketeering activity consisting of repeated violations of the federal wire fraud statute, 18 U.S.C. § 1343, based upon the use of the wires in interstate commerce to submit or cause to be submitted more than one hundred fraudulent claims for Windshield Replacement Services on a continuous basis for more than one year seeking insurance payments under GEICO insurance policies that Godfrey LLC was never entitled to receive because: (i) Godfrey LLC never legitimately provided the billed-for Windshield Replacement Services; and (ii) Godfrey LLC lacked standing to seek reimbursement in the first instance. A representative sample of the fraudulent bills and corresponding claim submissions submitted to GEICO using wires in interstate commerce that comprise, in part, the pattern of racketeering activity identified through the

36

date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "2". Each such wire transmission was made by A. Godfrey, T. Godfrey, and Alexander in furtherance of the wire fraud scheme.

125.    A. Godfrey, T. Godfrey, and Alexander knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

126.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid an amount to be determined at trial, but in no event less than $75,000.00 pursuant to the fraudulent claims submitted through Godfrey LLC.

127.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**NINTH CAUSE OF ACTION**
**Against A. Godfrey, T. Godfrey, and Alexander**
**(Violation of Ariz. Rev. Stat. § 13-2314.04)**

128.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

129.    A&G Auto Glass is an "enterprise" under Ariz. Rev. Stat. § 13-2314.04.

130.    In furtherance of the fraudulent claims submitted through Godfrey LLC, T. Godfrey and Alexander submitted or caused to be submitted more than one hundred fraudulent invoices through Godfrey LLC in order to obtain reimbursement from GEICO.

131.    When the claims for reimbursement were submitted to GEICO, A. Godfrey, T. Godfrey, and Alexander knew that the submission of invoices contained false and

misleading information concerning facts material to GEICO's determination to pay the claims, including misrepresentations that: (i) Godfrey LLC had provided the underlying Windshield Replacement Services to Insureds when, in fact, it did not; and (ii) Godfrey LLC had standing to seek reimbursement from GEICO in the first instance, when in fact it did not.

132.    These knowing and intentional acts constitute a pattern of unlawful activity, in that said acts constitute violations of Ariz. Rev. Stat. §§ 13-2310, 20-463(A)(1)(c), 20-463(A)(5), 20-463.01(A)(1)(a), and 20-463.01(A)(1)(c).

133.    This pattern of unlawful activity resulted in GEICO issuing payment for the reimbursement of more than one hundred claims for which it otherwise would not have provided reimbursement.

134.    A. Godfrey, T. Godfrey, and Alexander's pattern of unlawful activity has caused GEICO to sustain damages in an amount to be determined at trial, but in no event less than $75,000.00.

135.    By reason of A. Godfrey, T. Godfrey, and Alexander's conduct, GEICO is also entitled to recover threefold the actual damages it actually sustained, reasonable attorney's fees, and court costs pursuant to Ariz. Rev. Stat. § 13-2314.04.

**TENTH CAUSE OF ACTION**
**Against A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC**
**(Common Law Fraud)**

136.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

137.    A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed

38

material facts in the course of their submission of fraudulent claims to GEICO for reimbursement.

138.   The false and fraudulent statements of material fact and acts of fraudulent concealment include the misrepresentations that: (i) Godfrey LLC had legitimately provided the billed-for Windshield Replacement Services to Insureds, when in fact it had not; and (ii)  Godfrey LLC had standing to seek reimbursement from GEICO in the first instance, when in fact it did not.

139.   A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC intentionally made the above-described false and fraudulent statements and concealed material facts from GEICO in a calculated effort to mislead GEICO and induce GEICO to pay for reimbursement of non-reimbursable claims.

140.   GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid an amount to be determined at trial, but in no event less than $75,000.00 in the reimbursement of claims made by A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC through Godfrey LLC.

141.   The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

142.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

. . .

### ELEVENTH CAUSE OF ACTION
**Against A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC**
**(Unjust Enrichment)**

143.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

144.    As set forth above, A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

145.    When GEICO paid the invoices provided by A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC submitted for reimbursement, it reasonably believed that the billed-for Windshield Replacement Services described in invoices submitted by A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC through Godfrey LLC were legitimately provided and eligible for reimbursement.

146.    Absent the misrepresentations by the Defendants, GEICO would not have issued the payment for the claims identified in Exhibit "2".

147.    Therefore, GEICO's payment of the claims submitted by A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC through Godfrey LLC resulted in A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC being unjustly enriched, as A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC received payment for claims they submitted to GEICO, which should not have been paid because Godfrey LLC never provided the underlying Windshield Replacement Services as described in their invoices.

148.    A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC's enrichment was at GEICO's expense, as GEICO paid A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC, through Godfrey LLC more than $75,000.00.

149.   By reason of the above, A. Godfrey, T. Godfrey, Alexander, and Godfrey LLC have been unjustly enriched in an amount to be determined at trial, but in no event less than $75,000.00.

**TWELFTH CAUSE OF ACTION**
**Against T. Godfrey, Alexander, and A. Godfrey**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

150.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

151.   A&G Auto Glass and Godfrey LLC together constitute an association-in-fact "enterprise" (the "A&G Fraud Enterprise") as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce. The members of the A&G Fraud Enterprise are and have been associated through time, joined in purposed and organized in a manner amenable to hierarchal and consensual decision making, with each member fulfilling a specific and necessary role to carry out and facilitate its common purpose. Specifically, A&G Auto Glass and Godfrey LLC ostensibly are different businesses – with different names and tax identification numbers – that were created and use as vehicles to achieve a common purpose – namely, to facilitate the submission of fraudulent charges to GEICO and other insurers. The A&G Fraud Enterprise has been operated under two separate names and tax identification numbers in order to reduce the number of bills submitted under any individual name, in an attempt to avoid attracting the attention and scrutiny of GEICO and other insurers to the volume of billing and the pattern of fraudulent charges originating from any one business. Accordingly, the carrying out of this scheme would be beyond the capacity of each member of the A&G Fraud Enterprise acting singly or without the aid of each other.

152.    The A&G Fraud Enterprise is distinct from, and has an existence beyond, the pattern of racketeering that is described herein, namely by recruiting, employing overseeing and coordinating individuals who have been responsible for facilitating and performing a wide variety of administrative and professional functions beyond the acts of wire fraud (i.e., the submission of the fraudulent bills to GEICO and other insurers), by creating and maintaining files and other records, by recruiting and supervising personnel, by negotiating and executing various contracts, and by maintaining the bookkeeping and accounting functions necessary to manage the receipt and distribution of the insurance proceeds.

153.    T. Godfrey, Alexander, and A. Godfrey each has been employed by and/or associated with the A&G Fraud Enterprise.

154.    A. Godfrey, T. Godfrey, and Alexander have knowingly conducted and/or participated, directly or indirectly, in the conduct of Godfrey LLC's affairs through a pattern of racketeering activity consisting of repeated violations of the federal wire fraud statute, 18 U.S.C. § 1343, based upon the use of the wires in interstate commerce to submit, or cause to be submitted, hundreds of fraudulent claims for Windshield Replacement Services on a continuous basis for more than two years seeking payments that A&G Auto Glass and Godfrey LLC were not entitled to receive because: (i) neither A&G Auto Glass nor Godfrey LLC legitimately provided the billed-for Windshield Replacement Services; and (ii) neither A&G Auto Glass nor Godfrey LLC had standing to seek reimbursement in the first instance. A representative sample of the fraudulent bills and corresponding claim submissions submitted to GEICO using wires in interstate commerce that comprise, in part, the pattern of racketeering activity identified through the

42

date of this Complaint are described, in part, in the charts annexed hereto as Exhibits "1" and "2".

155.    The A&G Fraud Enterprise's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of wire fraud are the regular way in which A. Godfrey, T. Godfrey, and Alexander operated the A&G Fraud Enterprise, insofar as the enterprise is not engaged in a legitimate business, and acts of wire fraud therefore are essential in order for the enterprise to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of wire fraud implies a threat of continued criminal activity.

156.    The A&G Fraud Enterprise is engaged in in inherently unlawful acts, inasmuch as it submitted fraudulent billing to GEICO and other insurers. These inherently unlawful acts are taken by the A&G Fraud Enterprise in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent billing.

157.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid an amount to be determined at trial, but in no event less than $300,000.00 pursuant to the fraudulent bills submitted through A&G Auto Glass and Godfrey LLC.

158.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

. . .

43

**THIRTEENTH CAUSE OF ACTION**
**Against T. Godfrey, Alexander, and A. Godfrey**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

159.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

160.   T. Godfrey, Alexander, and A. Godfrey are employed by and/or associated with the A&G Fraud Enterprise.

161.   T. Godfrey, Alexander, and A. Godfrey knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the A&G Fraud Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal wire fraud statute, 18 U.S.C. § 1343, based upon the use of the wires in interstate commerce to submit, or cause to be submitted, hundreds of fraudulent claims for Windshield Replacement Services on a continuous basis for more than two years seeking insurance payments under GEICO insurance policies that A&G Auto and Glass Godfrey LLC was never entitled to receive because: (i) neither A&G Auto Glass nor Godfrey LLC legitimately provided the billed-for Windshield Replacement Services; and (ii) neither A&G Auto Glass nor Godfrey LLC had standing to seek reimbursement in the first instance. A representative sample of the fraudulent bills and corresponding claim submissions submitted to GEICO using wires in interstate commerce that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibits "1" and "2". Each such wire transmission was made by T. Godfrey, Alexander, and A. Godfrey in furtherance of the wire fraud scheme.

162.    T. Godfrey, Alexander, and A. Godfrey knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

163.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid an amount to be determined at trial, but in no event less than $300,000.00 pursuant to the fraudulent bills submitted through A&G Auto Glass and Godfrey LLC.

164.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**FOURTEENTH CAUSE OF ACTION**
**Against T. Godfrey, Alexander, and A. Godfrey**
**(Violation of Ariz. Rev. Stat. § 13-2314.04)**

165.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 73 above.

166.    A&G Auto Glass and Godfrey LLC together constitute an association-in-fact "enterprise" (the "A&G Fraud Enterprise") under Ariz. Rev. Stat. § 13-2314.04.

167.    The members of the A&G Fraud Enterprise are and have been associated through time, joined in purposed and organized in a manner amenable to hierarchal and consensual decision making, with each member fulfilling a specific and necessary role to carry out and facilitate its common purpose. Specifically, A&G Auto Glass and Godfrey LLC ostensibly are different businesses – with different names and tax identification numbers – that were created and use as vehicles to achieve a common purpose – namely,

45

to facilitate the submission of fraudulent charges to GEICO and other insurers. The A&G Fraud Enterprise has been operated under two separate names and tax identification numbers in order to reduce the number of bills submitted under any individual name, in an attempt to avoid attracting the attention and scrutiny of GEICO and other insurers to the volume of billing and the pattern of fraudulent charges originating from any one business. Accordingly, the carrying out of this scheme would be beyond the capacity of each member of the A&G Fraud Enterprise acting singly or without the aid of each other.

168. The A&G Fraud Enterprise is distinct from and has an existence beyond the pattern of racketeering that is described herein, namely by recruiting, employing overseeing and coordinating individuals who have been responsible for facilitating and performing a wide variety of administrative and professional functions beyond the acts of wire fraud (i.e., the submission of the fraudulent bills to GEICO and other insurers), by creating and maintaining files and other records, by recruiting and supervising personnel, by negotiating and executing various contracts, and by maintaining the bookkeeping and accounting functions necessary to manage the receipt and distribution of the insurance proceeds.

169. T. Godfrey, Alexander, and A. Godfrey each has been employed by and/or associated with the A&G Fraud Enterprise.

170. In furtherance of the fraudulent claims submitted through Godfrey LLC and A&G Auto Glass, T. Godfrey, Alexander, and A. Godfrey submitted or caused to be submitted hundreds of fraudulent invoices through Godfrey LLC and A&G Auto Glass in order to obtain reimbursement from GEICO.

171.    When the claims for reimbursement were submitted to GEICO, A. Godfrey, T. Godfrey, and Alexander knew that the submission of invoices contained false and misleading information concerning facts material to GEICO's determination to pay the claims, including misrepresentations that: (i) Godfrey LLC and A&G Auto Glass had provided the underlying Windshield Replacement Services  to Insureds when, in fact, they did not; and (ii) Godfrey LLC and A&G Auto Glass had standing to seek reimbursement from GEICO in the first instance, when in fact they did not.

172.    These knowing and intentional acts constitute a pattern of unlawful activity, in that said acts constitute violations of Ariz. Rev. Stat. §§ 13-2310, 20-463(A)(1)(c), 20-463(A)(5), 20-463.01(A)(1)(a), and 20-463.01(A)(1)(c).

173.    This pattern of unlawful activity resulted in GEICO issuing payment for the reimbursement of hundreds of claims for which it otherwise would not have provided reimbursement.

174.    A. Godfrey, T. Godfrey, and Alexander's pattern of unlawful activity has caused GEICO to sustain damages in an amount to be determined at trial, but in no event less than $300,000.00.

175.    By reason of A. Godfrey, T. Godfrey, and Alexander's conduct, GEICO is also entitled to recover threefold the actual damages it actually sustained, reasonable attorney's fees, and court costs pursuant to Ariz. Rev. Stat. § 13-2314.04.

## **JURY DEMAND**

176.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

1    **WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO

2  Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand

3  that a Judgment be entered in their favor:

4

5       A.      On the First Cause of Action against A&G Auto Glass and Godfrey LLC, a

6  declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that

7  A&G Auto Glass and Godfrey LLC have no right to receive payment for any pending bills

8  submitted to GEICO;

9

10      B.      On the Second Cause of Action against T. Godfrey and Alexander,

11 compensatory damages in favor of GEICO in an amount to be determined at trial but in

12 excess of $225,000.00, together with treble damages, costs, interest and reasonable

13 attorneys' fees pursuant to 18 U.S.C. § 1964(c);

14

15      C.      On the Third Cause of Action against T. Godfrey and Alexander,

16 compensatory damages in favor of GEICO an amount to be determined at trial but in

17 excess of $225,000.00, together with treble damages, costs, interest and reasonable

18 attorneys' fees pursuant to 18 U.S.C. § 1964(d);

19

20      D.      On the Fourth Cause of Action against T. Godfrey and Alexander,

21 compensatory damages in favor of GEICO in an amount to be determined at trial but in

22 excess of $225,000.00, together with treble damages, costs, interest and reasonable

23 attorneys' fees pursuant to Ariz. Rev. Stat. § 13-2314.04;

24

25      E.      On the Fifth Cause of Action against T. Godfrey, Alexander, an A&G Auto

26 Glass, compensatory damages in an amount to be determined at trial but in excess of

27 $225,000.00, together with punitive damages, costs, interest and such other and further

28 relief as this Court deems just and proper;

F.     On the Sixth Cause of Action against T. Godfrey, Alexander, an A&G Auto Glass, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $225,000.00, plus costs, interest and such other and further relief as this Court deems just and proper.

G.     On the Seventh Cause of Action against T. Godfrey, Alexander, and A. Godfrey, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $75,000.00, together with treble damages, costs, interest and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c);

H.     On the Eighth Cause of Action against T. Godfrey, Alexander, and A. Godfrey, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $75,000.00, together with treble damages, costs, interest and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(d);

I.     On the Ninth Cause of Action against T. Godfrey, Alexander, and A. Godfrey, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $75,000.00, together with treble damages, costs, interest and reasonable attorneys' fees pursuant to Ariz. Rev. Stat. § 13-2314.04;

J.     On the Tenth Cause of Action against T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC, compensatory damages in an amount to be determined at trial but in excess of $75,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

K.     On the Eleventh Cause of Action against T. Godfrey, Alexander, A. Godfrey, and Godfrey LLC, compensatory damages in favor of GEICO in an amount to be

determined at trial but in excess of $75,000.00, plus costs, interest and such other and further relief as this Court deems just and proper.

L.    On the Twelfth Cause of Action against Alexander, A. Godfrey, and T. Godfrey, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $300,000.00, together with treble damages, costs, interest and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c);

M.    On the Thirteenth Cause of Action against Alexander, A. Godfrey, and T. Godfrey, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $300,000.00, together with treble damages, costs, interest and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(d); and

N.    On the Fourteenth Cause of Action against Alexander, A. Godfrey, and T. Godfrey, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $300,000.00, together with treble damages, costs, interest and reasonable attorneys' fees pursuant to Ariz. Rev. Stat. § 13-2314.04.

Dated this 24th day of February, 2021.

**THORPE SHWER, P.C.**

By:  /s/ *William L. Thorpe*
        William L. Thorpe
        Mitchell W. Fleischmann
        Jamie Gill Santos

AND

**RIVKIN RADLER LLP**
Barry I. Levy (to be admitted *pro hac vice*)
Steven Henesy (to be admitted *pro hac* vice)
Melissa D. Medilien (to be admitted *pro hac vice*)
*Counsel for Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Co., and GEICO Casualty Co.*

50

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on February 24, 2021, I electronically transmitted the attached

3

document to the Clerk's office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the CM/ECF registrants.

5

6

*/s/  Lynn Acosta*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28